UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ACULLIANCE HOLDINGS, INC.,

Plaintiff,

v.

BLS LOGISTICS LLC, et al.,

Defendants.

Case No. 25-cv-06776-ASK

**ORDER GRANTING DEFENDANT SYCHUK'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANT NATIONAL CAPITAL LOGISTICS LLC'S MOTION TO STRIKE AND TO DISMISS**

Re: Dkt. Nos. 47, 51

This case involves the disappearance of a shipment of hemp and the state and federal laws that may be brought to bear when interstate transport goes awry. In brief, and as alleged by Plaintiff Aculliance Holdings, Inc. ("Aculliance"):

Aculliance engaged Defendant BLS Logistics LLC ("BLS"), a transportation broker, to arrange for the transport of 144 pounds of premium hemp from California to Florida. BLS contracted with co-Defendant National Capital Logistics LLC ("NCL"), a motor carrier, to transport the hemp. NCL, in turn, assigned co-Defendant Deonzelle Pierce to drive the hemp to Florida. Pierce picked up the hemp in Pinole, California, on April 22, 2025, and began driving east when, near Reno, Nevada, he stopped. From that point on, we lose track of the hemp. It never arrived at its destination in Florida. *See* Third Amended Complaint ("TAC") at 1–6.

Aculliance has filed claims against BLS and the chain of transporters, *see generally* TAC; BLS has filed crossclaims against those downstream from it, *see generally* Dkt. 38 ("Crossclaim"). The Court addresses the pleadings challenges to these claims.

I.    **BACKGROUND**

In August 2025, Aculliance sued BLS, NCL, and Pierce, seeking reimbursement for the

hemp. *See generally* Dkt. 1. BLS moved to dismiss the negligence and breach of contract claims against it. *See generally* Dkt. 13. The Court dismissed the negligence claim with prejudice and allowed the breach of contract claim to proceed. Dkt. 24 at 4.

Aculliance filed a second amended complaint, Dkt. 32, and then a third, the TAC, which is operative. In the TAC, Aculliance realleges the breach of contract claim against BLS that survived earlier dismissal and adds Bogdan Sychuk—BLS's founder and CEO—as a defendant for same, contending that BLS and Sychuk are alter egos. *See* TAC at 6–9. The TAC's second claim is against NCL for loss or damage to freight under the Carmack Amendment, 49 U.S.C. § 14706. *Id.* at 9–10. The third and fourth claims are against Pierce for negligence and for civil theft, respectively. *Id.* at 10–12. NCL (Dkt. 44), BLS (Dkt. 46), and Pierce (Dkt. 56) answered.

BLS filed its crossclaim on December 29, 2026—the same day that Aculliance filed the TAC. The Crossclaim includes claims again NCL for breach of contract, express contractual indemnity, equitable indemnity, and contribution, *see Crossclaim* at 5–7; and claims against Pierce and VKL for equitable indemnity and contribution, *see Crossclaim* at 7.

The two motions to dismiss before the Court followed. NCL moved to strike and to dismiss the Crossclaim in its entirety under Federal Rules of Civil Procedure 12(f) and 12(b)(6), respectively. *See generally* Dkt. 47 ("NCL's Motion"). Sychuk moved under Rule 12(b)(6) to dismiss Aculliance's breach of contract claim again him, urging the Court to reject the alter ego theory. *See generally* Dkt. 51 ("Sychuk's Motion").

## II.     LEGAL STANDARD

The Court applies the familiar standard under which a plaintiff must state a facially plausible claim to relief to survive a 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III.     DISCUSSION

### A.     Sychuk's Motion

The Court has already found that Aculliance's breach of contract claim against BLS is

*United States District Court*
*Northern District of California*

cognizable. *See* Dkt. 24 at 5–6. Sychuk's liability for that claim depends on the theory that he and BLS are alter egos. *See* TAC at 6–7.

Ordinarily under California law, "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000). But a court may pierce the corporate veil and hold individuals liable for the obligations of a corporation if the plaintiff establishes "(1) such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists, and (2) an inequitable result if the acts in question are treated as those of the corporation alone." *Leek v. Cooper*, 194 Cal. App. 4th 399, 417 (2011) (citing *id.*).

With respect to the unity of interest prong, Aculliance alleges that, as the founder, owner, and chief executive officer of BLS, Sychuk "exercised exclusive control over the company's operations and financial affairs." TAC at 6. Sychuk also "intermingled the funds and assets of BLS for his own personal use and failed to treat them as company assets" and "used his personal bank account to receive payments intended for BLS through Zelle[.]" *Id.* at 7. "Specifically, Sychuk instructed Plaintiff to send payment for BLS' services to Sychuk's personal phone number, which was linked to a Zelle account belonging to Sychuk rather than BLS." *Id.* And, Aculliance adds, BLS "was operated and managed with disregard to company formalities." *Id.*

When analyzing unity of interest, courts look to factors such as "inadequate capitalization, commingling of assets, [and] disregard of corporate formalities." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994). Aculliance alleges no facts going to BLS's capitalization. *See id.* at 6–7. And its allegation that BLS "was operated and managed with disregard to company formalities" is merely a legal conclusion. *See id.* at 6; *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." (citation omitted)). Aculliance's commingling allegations boil down to the fact that BLS received payment to a Zelle account tied to Sychuk's personal phone number. *See* TAC at 7; Dkt. 36-4. Inferring commingling from this fact alone is a stretch. Proprietors of small businesses regularly use personal cell phones for business purposes. Sychuk

3

United States District Court
Northern District of California

may have kept BLS funds in one bank account and funds for personal use in another but used the same phone number for both, or he may have avoided comingling some other way. Ultimately, these allegations of unity of interest are insufficient.

With respect to the inequitable result prong, Aculliance alleges that if Sychuk's actions— including making representations regarding extensive insurance coverage—are treated solely as those of BLS, then "an inequitable result would follow, as Sychuk was paid personally for services performed by BLS, not himself." *Id.* But that argument—a version of which could be made in any case involving comingling—rests on the poorly supported premise that Sychuk was indeed paid personally. The argument also falls short of establishing that treating Sychuk as separate from BLS "would sanction a fraud or promote injustice." *Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499, 222 P.2d 145, 147 (1950) (citations omitted). And to the extent Aculliance contends that the inequity at issue is that BLS may be unable to pay a judgment, "[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy [the inequitable result] standard." *Sonora Diamond*, 83 Cal. App. 4th at 539. The alter ego doctrine instead requires "some conduct amounting to bad faith," *id.* at 837, and Aculliance has alleged no such conduct here.

The Court dismisses without prejudice the claim for breach of contract against Sychuk. In the event that Aculliance learns new facts, whether through discovery or otherwise, that permit viable alter ego allegations, Aculliance may seek leave to amend to add such allegations.

### B.    NCL's Motion

NCL's Motion consists of three arguments: first, that the Court should strike the Crossclaim because it is not timely, *see* NCL's Motion at 3–4; second, that all four claims are preempted by the Carmack Amendment, *see* NCL's Motion at 4–8; and, third, that all four claims are also preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501 ("FAAAA"), *see* NCL's Motion at 8–9. The Court addresses these arguments in turn.

#### 1.    Motion to strike

NCL moves to strike BLS's crossclaims pursuant to Federal Rule of Civil Procedure 12(f), which empowers the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* at 3; Fed. R. Civ. P. 12(f). NCL argues that

4

"because the crossclaim was filed without leave of court and after the last day to amend pleadings, the crossclaim is impertinent and should be stricken." NCL's Motion at 3. NCL asks the Court to apply case law pertaining to omitted counterclaims. *Id.*; *see, e.g.*, *Elite Ent., Inc. v. Khela Bros. Ent.*, 227 F.R.D. 444, 446–47 (E.D. Va. 2005) (discussing "the requirement that an amended response reflect the change in theory or scope of the amended complaint"). On NCL's theory, because the Crossclaim "does not reflect the change in theory or scope of the amended complaint," BLS likely needed leave of court to file it. NCL's Motion at 4.

While NCL presents a potentially interesting question of federal practice, striking a crossclaim at this early stage in the litigation makes little sense. BLS filed its Crossclaim before the deadline that the undersigned's predecessor had given to "respond to the SAC," *see* Dkt. 35 at 1, and the Crossclaim is at least arguably such a responsive pleading. The Court is disinclined to impose the heavy price of finding that BLS waived its crossclaims so early in the case, while the pleadings were, in any event, still in flux. NCL's motion to strike is denied.

### 2.    The Carmack Amendment

NCL argues that dismissal should be granted because the Carmack Amendment preempts all of BLS's claims. NCL's Motion at 4, 7. BLS responds that dismissal should be denied because Carmack preempts none of its claims. Dkt. 54 at 9.

In its current form, the Carmack Amendment to the Interstate Commerce Act provides that:

> A carrier providing transportation . . . shall issue a receipt or bill of lading for property it receives for transportation. . . . That carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported. . . .

49 U.S.C. § 14706(a)(1). The Amendment also includes an apportionment provision whereby "[t]he carrier issuing the receipt or bill of lading . . . or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred[.]" 49 U.S.C. § 14706(b). The Ninth Circuit has described Carmack as "a uniform national liability policy for interstate carriers." *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992) (internal citations omitted). As far as claims brought

United States District Court
Northern District of California

by shippers against carriers are concerned, "[i]t is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007).

But the degree to which Carmack preempts claims brought by brokers against carriers is not so "well settled," and the Ninth Circuit Court of Appeals appears not to have addressed the question. *See InTransit, Inc. v. Excel N. Am. Rd. Transp., Inc.*, 426 F. Supp. 2d 1136, 1139 (D. Or. 2006) (noting that "[t]he case law appears to go either way on the issue of the applicability of Carmack to brokers"). The parties disagree on this issue, with NCL arguing for preemption and BLS against.

Two of BLS's claims—for breach of contract and for express contractual indemnity—arise from a contract. The two others—for equitable indemnity and for contribution—arise from the common law. This distinction is salient, and the Court addresses the two sets of claims in turn.

### a. The contract claims

BLS's claims for breach of contract and for express contractual indemnity arise from the Broker Carrier Agreement between BLS and NCL. Crossclaim at 5–6; *see* Crossclaim Ex. A. NCL contends that the claims for breach of contract and express contractual indemnity are preempted, pointing to the comprehensiveness of Carmack preemption. NCL's Motion at 4–5. BLS argues against preemption with reference to *RLI Insurance Company v. GS Transportation Inc.*, a 2012 District Court case from this District. Dkt. 54 at 10–12; *see* No. C-12-03391(EDL), 2012 WL 13070149 (N.D. Cal. Nov. 9, 2012).

*RLI* concerned a contract between a broker and a carrier in which the carrier, GST, agreed to indemnify the broker, Red Arrow. *See* 2012 WL 13070149 at *1. After a shipper's goods were stolen while in GST's possession, an insurer asserting Red Arrow's subrogated rights sued GST for breach of contract pursuant to the brokerage agreement's indemnification clause. *Id.* GST moved to dismiss based on Carmack preemption. *See id.* at 2.

The *RLI* Court inspected case law relating to contractual indemnity claims brought under brokerage contracts and found that courts consistently "have held that such claims are not preempted by the Carmack Amendment." *Id.* at 3–5; *see, e.g.*, *Exel, Inc. v. S. Refrigerated*

United States District Court
Northern District of California

*Transp.*, Inc., No. 2:10-CV-994, 2012 WL 3064106 (S.D. Ohio July 27, 2012) (reconsidering at summary judgment the court's earlier dismissal of a broker's contract claim after realizing that such claim was based not on standing in for the shipper but instead on a separate brokerage agreement with the carrier); *InTransit, Inc. v. Excel N. Am. Rd. Transp., Inc.*, 426 F. Supp. 2d 1136 (D. Or. 2006) (concluding that an action where "liability arises from a [brokerage] contract" was "sufficiently removed from a shipper or some other party who has rights under the bill of lading" to fall outside Carmack preemption); *Edwards Bros. v. Overdrive Logistics, Inc.*, 260 Ga. App. 222, 581 S.E.2d 570 (2003) (finding no preemption "[b]ecause the Carmack Amendment was enacted to protect the rights of shippers suing under a receipt or bill of lading, not brokers"). In keeping with the reasoning of these cases, the *RLI* Court denied dismissal, concluding that because the contractual indemnity claim at issue arose under a separate contract from the bill of lading, Carmack did not preempt it.

The Court agrees with this approach. The brokerage agreement between BLS and NCL does not interfere with Aculliance's rights, the party to which NCL is liable under Carmack. *See* 49 U.S.C. § 14706(a)(1) ("[The] carrier . . . [is] liable to the person entitled to recover under the receipt or bill of lading."); *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092 (9th Cir. 2011) ("A bill of lading is a contract between the carrier and the shipper."); *RLI*, 2012 WL 13070149 at *3 ("[The carrier] has not pointed to any language in the bill of lading here expanding the definition of 'shipper' to include a transportation broker. . . ."). Thus, enforcing the terms of the instant Broker Carrier Agreement—a separate contract from the bill of lading, and one which NCL independently formed with a party other than the shipper, Aculliance—leaves Carmack's statutory scheme untouched.

NCL argues that the Court should look to a Fourth Circuit case, *5K Logistics, Inc. v. Daily Express, Inc.*, for the "implicit[] hold[ing] that a breach of contract action against a carrier is preempted while one against a broker is not." NCL's Motion at 8; *see* 659 F.3d 331 (4th Cir. 2011). But *5K* has no such holding, however implicit. There, a shipper, Dominion Resources Services ("DRS"), hired a broker, 5K Logistics ("5K"), which in turn subcontracted with a carrier, Daily Express ("DXI"), to transport the shipper's goods. *5K Logistics*, 659 F.3d at 334. After the

goods were damaged in transit, DRS sued 5K for breaching the contract between them, and the District Court found 5K liable, awarding damages to DRS. *See id.* In an ensuing third-party action, the District Court awarded 5K indemnity against DXI under the Carmack Amendment. *See id.* at 334–35; *Dominion Res. Servs., Inc. v. 5K Logistics, Inc.*, No. 3:09-CV-315, 2010 WL 2721355, *3 (E.D. Va. July 8, 2010), *rev'd and remanded sub nom. 5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, (4th Cir. 2011) (reasoning that 5K could assert DRS's Carmack claims "where 5K agreed in its contract with [DRS] to assume responsibility for any losses to [DRS] property"). DXI appealed this judgment to the Fourth Circuit Court of Appeals, which reversed. *5K Logistics*, 659 F.3d at 334–35. The Fourth Circuit held that the Carmack Amendment's apportionment provision does not apply to brokers, *id.* at 337, and that the indemnity agreement between DRS and 5K did not constitute an assignment of DRS's Carmack claims, *see id.* at 337–38. In dicta, the Court noted that 5K could have negotiated for terms assigning it such claims. *Id.* at 338.

NCL seems to think that this principle of the *5K* decision—*i.e.*, that a broker is well-positioned to protect itself through the terms of its contracts—helps its case. *See* NCL's Motion at 6. But the principle is, on the contrary, a welcome one for BLS. This is because, unlike 5K, BLS *did* protect itself—specifically, with the indemnification provision in its separate contract with the shipper, NCL, *see* Crossclaim Ex. A § 7. Consequently, when things went south, BLS was positioned to seek indemnity against NCL based on the terms of that agreement—as, indeed, it has done with its contract claims, *see* Crossclaim at 5–6.[1] There is nothing in the Fourth Circuit's *5K* decision to suggest that Carmack preempts contract claims of this sort. Rather, the *5K* decision conveys the Fourth Circuit's commitment to *honoring* contracts between brokers and carriers, as

---

[1] The contract at issue in *5K* was between the broker and the *shipper*, and the question in dispute was whether such contract allowed 5K, the broker, to stand in the shoes of the shipper for purposes of bringing claims under Carmack against the carrier. *See 5K Logistics*, 659 F.3d at 337–38. Here, the analogous contract between BLS and the shipper, Aculliance, is not at issue, and, unlike the broker in *5K*, BLS need not resort to the shipper's rights in order to seek indemnity against the carrier, owing to the presence of the indemnification provision in its Broker Carrier Agreement with NCL, *see* Crossclaim Ex. A § 7. BLS is not standing in the shoes of Aculliance, and accordingly the Court does not understand BLS to be bringing any claims under the Carmack Amendment. To the extent that BLS would like to assert such a claim—as BLS's counsel suggested it might at oral argument—it may seek leave to amend to do so. But it is not clear to the Court at this stage how BLS could viably assert a Carmack claim separate and apart from its contract claims, nor why BLS would feel the need to try given that its contract claims survive dismissal, *see* Section IV, *infra*.

8

when that Court noted that "we cannot ignore the terms of [5K's] agreement [with DXI.]" *See id.* at 338 (noting also that "breach of contract action[s] [are] not preempted by the Carmack Amendment inasmuch as 5K is a broker, not a carrier"). Nor can this Court ignore the terms of BLS's agreement with NCL. BLS's claims for breach of contract and express contractual indemnity are not preempted by the Carmack Amendment.

### b.    The common law claims

With respect to the possible preemption of BLS's common law claims, the parties mostly rely on the same arguments that they advanced with respect to the contract claims, with NCL looking to *5K Logistics*, NCL's Motion at 5–8, and BLS looking to *RLI*, Dkt. 54 at 10–11. NCL adds the additional argument that the exclusion of brokers from Carmack's apportionment provision, 49 U.S.C. § 14706(b), "evidences Congress'[s] intent to bar [indemnification and contribution] claims by brokers." NCL's Motion at 8.

In the absence of guidance from the Ninth Circuit as to whether Carmack preempts common law equitable indemnity and contribution claims brought by brokers against carriers, the Court finds it useful to consider Carmack's purpose. As the Supreme Court has explained, before Carmack, "the rule of carriers' liability . . . was either that of the general common law . . . or that determined by the supposed public policy of a particular state . . . or that prescribed by statute law of a particular state." *Adams Express Co. v. Croninger*, 226 U.S. 491, 504 (1913). The result was that "[n]either uniformity of obligation nor of liability was possible until Congress should deal with the subject." *Id.* at 504–05. Congress did so with Carmack, which "supersede[d] all the regulations and policies of a particular state" with respect to carrier liability. *Id.* at 505. Consequently,

> [a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such [bill of lading] contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist.

*Id.* at 505–06. Indeed, Carmack "is a comprehensive exercise of Congress's power to regulate interstate commerce" and as such "has long been interpreted to preempt state liability rules

9

United States District Court
Northern District of California

pertaining to cargo carriage, either under statute or common law[.]" *5K Logistics*, 659 F.3d at 335 (citing *id.*).

It could be argued that the common law claims at issue here pertain not to BCL's liability "for the actual loss or injury to the property," *see* 49 U.S.C. § 14706(a)(1), but rather to its liability with respect to contracting with a broker, and that accordingly such common law claims do not intrude on Carmack. But the Court considers Carmack liability sufficiently broad to encompass these common law claims. The statute's language is "comprehensive enough," the Supreme Court has indicated, "to embrace *all* damages resulting from *any* failure to discharge a carrier's duty with respect to *any* part of the transportation to the agreed destination." *New York, P. & N. R. Co. v. Peninsula Produce Exch. of Maryland*, 240 U.S. 34, 38 (1916) (emphasis added). The instant common law claims as alleged "result[] from [such a] failure to discharge a carrier's duty," and therefore fall within Carmack's reach.

BLS, of course, is a broker, not a shipper. But it seems to the Court that allowing common law claims by brokers to escape Carmack preemption would subject carriers to the very panoply of disparate state legal regimes that the Amendment was designed to guard against. Such claims could frustrate Carmack's purpose and disrupt its "uniform national liability policy" for carriers, *Hughes Aircraft*, 970 F.2d at 613. *See Hall*, 476 F.3d at 688 (describing "the purpose of the statute" as being "to create uniformity out of disparity" (internal citations and quotation marks omitted)); *see also Adams Express*, 226 U.S. at 505–06.

*RLI* does not address common law claims. *See generally* 2012 WL 13070149. Accordingly, to the extent that BLS relies on that case to salvage its claims for equitable indemnity and contribution, such reliance is misplaced. NCL's reliance on *5K Logistics* is more apposite. There, the Fourth Circuit noted in dicta that "[t]he Carmack Amendment clearly preempts any state statutory or common law claim for indemnification[.]" *5K Logistics*, 659 F.3d at 337.

The Court is not moved by NCL's apportionment provision argument. While it may be true that Congress "deci[ded] to exclude brokers" from the provision, such exclusion would not imply an intent to bar brokers' common law indemnification claims, as NCL contends, *see* NCL's

10

Motion at 8. The *inclusion* of brokers in the provision would certainly have signaled Congress's intent to preempt such claims. But their exclusion does not strike the Court as instructive one way or the other.

Finally, the Court addresses the distinction it has drawn between a broker's contractual and non-contractual causes of action. As discussed above, this distinction is supported by the case law. For instance, the Fourth Circuit noted in *5K Logistics*, albeit in dicta, that Carmack bars state statutory or common law claims for indemnification, *5K Logistics*, 659 F.3d at 337, while also observing that brokers have "every opportunity to protect [themselves] through the terms of [their] contracts[,]" *5K Logistics*, 659 F.3d at 33. Additionally, state contract claims do not modify the default legal regime that carriers face in the same way that state common law claims do, because contractual obligations are taken on expressly and voluntarily at the time a carrier agrees to provide its services. For at least these reasons, the Court is comfortable distinguishing between BLS's contractual and non-contractual claims.

Accordingly, the Court agrees with NCL that the Carmack Amendment preempts BLS's claims for equitable indemnity and contribution.

### 3.    The FAAAA

The FAAAA provides in relevant part that "[a] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). NCL contends that this statute preempts all four of BLS's claims. *See* NCL's Motion at 8–9. BLS asserts in opposition that it preempts none of them, because the "Broker Carrier Agreement" subjects NCL to extensive liability, including with respect to indemnification. *See* Dkt. 54 at 12–13. Because the Court finds that the Carmack Amendment preempts NCL's common law claims, *see* Section III(B)(2)(b), *supra*, it considers only whether the FAAAA preempts BLS's contract claims.

That question is not a difficult one. The FAAAA does not protect a carrier from liability stemming from "breach of its own, self-imposed undertakings." *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). BLS seeks recovery here for NCL's alleged breach of just such a "self-

United States District Court
Northern District of California

imposed" contract. Crossclaim at 5–6; *see* Crossclaim Ex. A; *see also id.* at 229 ("A remedy confined to a contract's terms simply holds parties to their agreements. . . ."). The FAAAA does not preempt BLS's claims for breach of contract and express contractual indemnity.

## IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS Sychuk's Motion and dismisses Aculliance's claim for breach of contract against Sychuk. If Aculliance learns new facts that permit viable alter ego allegations, it may seek leave to amend to add such allegations.

The Court also GRANTS IN PART AND DENIES IN PART NCL's Motion. The motion to strike is denied. The motion to dismiss is denied with respect to the first claim (for breach of contract) and the second claim (for express contractual indemnity) and is granted with respect to the third claim (for equitable indemnity) and the fourth claim (for contribution). Because the dismissal of the equitable indemnity and contribution claims is based on the application of Carmack Amendment preemption, a legal question, the dismissal is with prejudice. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) ("[A] district court does not err in denying leave to amend where the amendment would be futile." (citation omitted)).

**IT IS SO ORDERED.**

Dated: July 8, 2026

_____
AJAY KRISHNAN
United States Magistrate Judge